| | AUSA: | Benjamin Coats | Telephone: | (313) 226-9734 |
|---|---|---|---|---|
| AO 91 (Rev. 11/11)   Criminal Complaint | Special Agent: | Shohn Joyner | Telephone: | (571) 362-1714 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

13

United States of America
v.
Jamilie LEDESMA

Case: 2:19-mj-30151
Assigned To : Unassigned
Assign. Date : 3/29/2019
Description: CMP USA v. LEDESMA (SO)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 8, 2018__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substance. |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_Complainant's signature_

Shohn Joyner, Special Agent, DEA
_Printed name and title_

Sworn to before me and signed in my presence.

Date: __3-29-19__

City and state: __Detroit, Michigan__

_Judge's signature_

Elizabeth A. Stafford, United States Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Shohn T. Joyner, Special Agent with the United States Drug Enforcement Administration (DEA), being duly sworn, depose and state the following:

## INTRODUCTION

1. I have been employed with the DEA since February 2012, assigned to the DEA Detroit Field Division Office, Detroit Michigan, and am a sworn Task Force Agent assigned to the Federal Bureau of Investigation (FBI) Violent Gang Task Force, in Detroit, Michigan. I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2. I have been a DEA Special Agent sworn since February 2012. From February 2012 until present, I have been assigned to the DEA Detroit Field Division Office, Detroit, Michigan. Currently and since July 2016, I have been detailed as a Task Force Agent assigned to the Federal Bureau of Investigations (FBI) Violent Gang Task Force (VGTF), in Detroit, Michigan. Before my employment with the DEA, I was employed with the United States Border Patrol (USBP) from March 2007 to October 2011. While with the Border Patrol, I held the position of Border Patrol Agent in Calexico, California, and the later position of Lead Border Patrol Agent, assigned to the Detroit Sector Intelligence Unit.

3. My official DEA duties include investigating criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. Some of the specialized training I have received includes, but is not limited to, classroom instruction concerning narcotics smuggling, money laundering investigations, conspiracy, complex investigations, and undercover. I have been involved in various types of undercover assignments, and in various drug investigations utilizing electronic surveillance, including the interception of wire communications, the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, the laundering and concealing of proceeds from drug trafficking and the street gangs who participate in these illegal activities.

4. As a result of these investigative activities, I have conducted and participated in numerous investigations as a DEA Special Agent and formerly as a Lead Border Patrol Agent that have resulted in the seizure of marijuana, prescription pills, synthetic drugs, cocaine, methamphetamine, and heroin. I make this affidavit, in part, based on personal knowledge derived from my participation in this investigation and, in part, based upon information from oral and written reports about this investigation and others that I have received from United States

-2-

law enforcement officers and Special Agents of the Drug Enforcement Administration. I am aware of the following information from several sources, including but not limited to, my own personal observations and participation in this investigation and my review and analysis of oral and written reports.

5. This affidavit is made in support of a criminal complaint for Jamilie LEDESMA for conspiracy to possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

6. This affidavit does not include all the information gathered during the course of this investigation. The following factual information is based on my personal knowledge, the knowledge of DEA and FBI Special Agents, as well as investigation conducted by other law enforcement entities.

## **BACKGROUND INVESTIGATION**

7. In September 2016, a credible and reliable confidential source of information (hereinafter ATF-1) identified a multi-kilogram heroin and cocaine trafficker (hereinafter referred to as Trafficker 1) operating in the Detroit metropolitan area as the leader of a Drug Trafficking Organization (DTO).

8.      ATF-1 stated that in March 2016, he[1] began purchasing heroin and cocaine from Trafficker 1. ATF-1 stated that he last purchased cocaine from Trafficker 1 in July 2016.

9.      Beginning as early as October 2016, based on covert video surveillance, investigators believe that they observed LEDESMA and other members of his DTO at the drug stash house of Trafficker 1.

10.     During the month of November 2016, at the direction and under the supervision of law enforcement, a known and reliable confidential source of information (hereinafter FBI-1) placed several recorded telephone calls to Trafficker 1 discussing the price and future purchase of cocaine. On or about November 16, 2016, investigators and FBI-1 conducted a controlled purchase of cocaine from Trafficker 1.

11.     Continuing through June 2017, an investigation was conducted targeting the activities of Trafficker 1 and LEDESMA. During the course of this investigation, LEDESMA was identified as a source of supply for Trafficker 1 as well as other individuals throughout the Detroit Metropolitan Area.

---

[1]     Male pronouns are used throughout this affidavit to refer to confidential sources of information, regardless of whether the sources, whose true identities are known to law enforcement, are in fact male or female. This use is for ease of reading only and is not intended to convey the actual gender of the person described.

12. On June 16, 2017, agents, including your affiant, executed a federal search warrant at the residence of a cocaine trafficker supplied by LEDESMA DTO (hereinafter referred to as Trafficker 2). After executing the search warrant, Trafficker 2 was advised his Miranda Rights. Trafficker 2 stated that he understood his rights, waived his rights, and agreed to speak with investigators.

13. Trafficker 2 stated that he used to purchase 1-2 kilograms of cocaine per transaction from an individual named "Gordo," at $35,000.00 per kilogram. Trafficker 2 stated that he has seen LEDESMA with multiple kilograms of cocaine. Trafficker 2 identified LEDESMA as a Puerto Rican male he knew before he (Trafficker 2) was incarcerated. Trafficker 2 stated that he and LEDESMA crossed paths in prison when they were both locked up. Trafficker 2 stated that LEDESMA and members of his organization drove different cars and identified several vehicles used by the DTO to deliver cocaine to him. Trafficker 2 identified a silver Buick sedan, a new silver Lincoln MKT, and a blue Buick sedan with dark tinted windows, as vehicles used LEDESMA and other members of the DTO to deliver cocaine to him/ her.

14. Based on electronic and physical surveillance, investigators were aware that LEDESMA and members of his DTO were utilizing the aforementioned vehicle identified by Trafficker 2 to transport kilogram quantities of cocaine. Investigators were aware based on electronic and physical surveillance that these

vehicles had frequented the stash house of Trafficker 1 and Trafficker 2. Trafficker 2 was shown a Michigan Driver's License image of LEDESMA and positively identified the individual as "Gordo." Trafficker 2 stated that, most of the time, LEDESMA would show up to his residence on to negotiate drug prices. Trafficker 2 stated that after the deals were negotiated, other members of the DTO would deliver the cocaine to him. Trafficker 2 stated that when he (Trafficker 2) was first released from prison he was purchasing cocaine from LEDESMA on a regular basis. Trafficker 2 identified himself as a broker between LEDESMA and other customers. Trafficker 2 stated, after a few deals, the quality of the cocaine that LEDESMA began to provide was bad and that "they" were compressing the cocaine and cutting the cocaine, and that he began receiving threats from individuals he had sold cocaine to purchase from LEDESMA or cocaine he had brokered on LEDESMA's behalf because of the low quality and purity of the cocaine.

15. Trafficker 2 stated the first deal was for a "Big 8" of cocaine (4-1/2 ounces) and that all of the deals occurred at his residence. Trafficker 2 was questioned about LEDESMA's last visit to his residence and what had occurred. Trafficker 2 stated that on or about June 3, 2016, LEDESMA visited him at his residence to negotiate the price of cocaine. Trafficker 2 stated they never agreed

on a price and that he was not interested because of the poor quality of cocaine they had provided in the past.

16. On July 24, 2017, the Honorable Mona K. Majzoub, U.S. Magistrate Judge, authorized four federal search warrants for residences associated to Trafficker 1. On that same day, investigators executed the four federal search warrants. During the search warrant executed at Trafficker 1's stash house, which investigators had observed LEDESMA frequent on several occasions with other members of the DTO, investigators located Trafficker 1 and seized approximately $225,000 of bulk currency banded together in $10,000 and $20,000 stacks on the dining room table. Based on training, experience, and knowledge of the investigation, your affiant believes that Trafficker 1 was anticipating the delivery of multi-kilograms of cocaine.

17. On August 8, 2017, investigators met with a confidential source (hereinafter referred to as DEA-1). DEA-1 is a cooperating defendant, meaning that he/she is a potential witness who is providing or has provided information with an expectation of receiving future judicial or prosecutorial consideration as a result of having provided truthful information to law enforcement officers. No promises have been made to DEA-1 regarding any potential sentence he might receive in exchange for cooperating.

18. DEA-1 has provided information about drug traffickers operating within the Eastern District of Michigan as well as outside of the District, which investigators have been able to verify. DEA-1 has provided information that has led to the seizure of over $200,000 in drug proceeds, 17 kilograms of cocaine, and multiple firearms. Because of the aforementioned, investigators believe DEA-1 to be credible and his information reliable.

19. DEA-1 identified himself as a member of the DTO. DEA-1 identified LEDESMA as one of the leaders of the DTO. DEA-1 was shown Michigan driver's license images of Trafficker 1 and Trafficker 2 and stated that LEDESMA was a cocaine sources of supply for individuals. DEA-1 identified a silver Buick sedan, a blue Buick Sedan, a silver Dodge Caravan and a blue Chrysler Town and Country as vehicle utilized by the DTO to transport drugs and currency. DEA-1 identified the DTO as a multi-kilogram cocaine and heroin organization operating out of Detroit, Michigan, capable of supplying at a minimum 100 kilograms of cocaine per month.

20. DEA-1 informed investigators that the aforementioned vehicles contained aftermarket hidden compartment used to conceal cocaine and currency. DEA-1 told investigators he had seen kilograms of cocaine concealed in the vehicles on several occasions and had observed LEDESMA and other members of the DTO in possession of several kilograms of cocaine.

21. On or about January 13, 2018, investigators met with a Source of Information (hereinafter referred to as SOI-2). SOI-2 was shown a Michigan driver's license image of LEDESMA. SOI-2 identified LEDESMA as the leader of the LEDESMA DTO operating in Detroit, Michigan. SOI-2 also identified several members of the DTO. SOI-2 stated LEDESMA and another previously identified major drug trafficker were no longer partners because LEDESMA wanted to be his own boss. SOI-2 identified 15551 Knollwood, Dearborn, Michigan, as the residence of Jamilie LEDESMA and a stash location for currency and on several occasions was present with LEDESMA when drug proceeds were being stored at the location. SOI-2 identified 4329 Springwells Street, Detroit, Michigan, as a stash house location utilized by the LEDESMA DTO. SOI-2 also identified a blue Chrysler Town and Country and a black Chevrolet Traverse as vehicles utilized by the LEDESMA DTO to transport drugs and drug money. SOI-2 also informed investigators that Jamilie LEDESMA was utilizing his dumpster business to facilitate his drug trafficking activities.

22. On March 8, 2018, investigators executed seven federal search warrants associated to the MORENO-PONCE DTO.

    a. At 15551 Knollwood Dearborn, Michigan, investigators encountered Jamilie LEDESMA and seized several expensive and inexpensive cellular telephones. Investigators are aware based on training and

experience that the possession of several expensive and inexpensive cellular telephones may be indicative of drug trafficking.

b. At 139 Cherry Valley Drive Inkster, Michigan, investigators encountered and arrested an associate of the LEDESMA DTO, who is a Mexican national not legally present in the United States and self-admitted member of Cartel Jalisco Nuevo Generation (CJNG). Investigators also seized approximately $140,000 and a U.S. Birth Certificate and Puerto Rico Driver's License with his image, containing fraudulent information. Investigators observed LEDESMA at the residence on several occasions and with this particular DTO associate.

c. At 4329 Springwells Detroit, Michigan, investigators encountered one of LEDESMA's brothers and seized two firearms, as well as a Chevrolet Traverse that contained an aftermarket false compartment for storing drug and proceeds. Investigators observed LEDESMA at the residence on several occasions meeting with suspected customers.

d. At 4033 Ash Street Detroit, Michigan, investigators encountered LEDESMA's brother's significant other and seized a firearm and marijuana.

e. At 5143 Scotten Avenue Detroit, Michigan, investigators encountered another previously identified member of the DTO and seized approximately $13,000 and 25 marijuana plants, as well as a blue Chrysler Town and Country that contained an aftermarket false compartment in the dashboard for storing drugs and proceeds. Investigators had observed LEDESMA at the residence on several occasions with this particular DTO member and other members of the DTO.

f. At 5150 Scotten Detroit, Michigan, the residence of another of LEDESMA's brothers, investigators encountered that brother and seized a Puerto Rico Driver's license and birth certificate with the image of Jamilie LEDESMA containing fraudulent information. Investigators observed LEDESMA at the residence on several occasions.

a. At 273 Harmon Street, Detroit, Michigan, investigators encountered another suspected member or associate of the DTO, who identified herself as the resident at the address. Investigators seized two kilograms of cocaine, one kilogram of heroin, 11 firearms, and a silver Buick LeSabre that contained an aftermarket false compartment for storing drug and proceeds. During an interview, the resident identified

-11-

LEDESMA and other members of the DTO. She stated that LEDESMA and other members of the DTO grew up in the same neighborhood and that she was asked by LEDESMA and other members of the DTO to reside at the residence rent-free. She was told by LEDESMA and other members of the DTO that they would need access to the residence. The resident stated that LEDESMA and other members of the DTO would frequent the residence and would always go upstairs where the guns and drugs were located.

## CONCLUSION

23. Based on the facts stated above, there is probable cause to believe that between in or around October 2016 and March 8, 2018, in the Eastern District of Michigan, Jamilie LEDESMA committed the offense of conspiracy to possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

_____
SA Shohn T. Joyner
Drug Enforcement Administration

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
ELIZABETH A. STAFFORD
UNITED STATES MAGISTRATE JUDGE